## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOSEPH KOURY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No._____ |
| v. | ) | |
| | ) | |
| XCELLENCE, INC., d/b/a XACT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

### NOTICE OF REMOVAL

Defendant Xcellence, Inc., d/b/a Xact ("Defendant"), by and through its undersigned counsel, hereby gives notice of removal of this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.  Defendant respectfully states the grounds for removal as follows:

1.      Plaintiff Joseph Koury ("Plaintiff"), commenced a civil action against Defendant in the Supreme Court of the State of New York, County of New York on May 12, 2008, captioned *Joseph Koury v. Xcellence, Inc., d/b/a XACT*, No. 106546/08 (the "Cause of Action"). A true and correct copy of the Complaint in the Cause of Action is attached as Exhibit A.

2.      As more fully set out below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Defendant has satisfied the procedural requirements for removal and this Court has original subject matter jurisdiction over the Cause of Action pursuant to 28 U.S.C. § 1332(a).

## I.      DEFENDANT HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

3.      The initial Summons and Complaint in the Cause of Action setting forth the claims upon which this Notice of Removal is based were served on Defendant on or about

May 14, 2008. The initial Summons and Complaint were the first pleadings received by Defendant. Accordingly, this Notice of Removal is being filed within thirty (30) days after Defendant's receipt of a copy of the initial Summons and Complaint, and is timely pursuant to 28 U.S.C. § 1446(b).

      4.      Venue is proper in this Court because the Supreme Court of the State of New York, County of New York is located within the Southern District of New York. 28 U.S.C. § 1441(a).

      5.      No previous Notice of Removal has been filed in this Cause of Action.

      6.      Pursuant to 28 U.S.C. § 1446(a) and Local Rule 81.1, Defendant will file within twenty (20) days a copy of: (1) all initial pleadings setting forth the claims upon which the Cause of Action is based; and (2) a copy of all the state court records. Pursuant to § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Court for the Supreme Court of the State of New York, County of New York.

## II.    REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

      7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states where the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest.

### A.    Complete Diversity of Citizenship Exists.

      8.      Plaintiff is an individual residing in New Jersey. Complaint ¶ 6. Therefore, Plaintiff is a citizen of New Jersey for the purposes of diversity.

      9.      Defendant is a corporation formed under the laws of the state of Missouri, with its principal place of business in Kansas. Complaint ¶ 7. Therefore, Defendant is a citizen of Missouri and Kansas for the purposes of diversity. 28 U.S.C. § 1332(c)(1).

10.    Pursuant to 28 U.S.C. § 1332, Plaintiff and Defendant are citizens of different states for the purpose of diversity jurisdiction.

**B.    The Amount in Controversy Requirement is Satisfied.**

11.    Plaintiff seeks in excess of $75,000, exclusive of costs and interest, for claims alleged in his Complaint.

12.    Plaintiff seeks "[d]amages in the amount of all accelerated sums due under the Purchase Agreement, plus the loss [Plaintiff] suffered as a result of Defendant's conduct." Complaint, Prayer for Relief, ¶ A.

13.    In the Purchase Agreement, Defendant originally agreed to purchase Accurate Repro, LLC from Plaintiff for a purchase price of $1,350,000, to be paid in sixty (60) monthly installments of $28,023.78. Complaint ¶¶ 11, 12, 13 and Compl. Ex. 1.

14.    On about September 29, 2007, Plaintiff and Defendant entered into "Amendment No. 1 to Purchase Agreement" ("Amendment No. 1") to amend the purchase price to $1,159,806.60, and amend the remaining monthly payments to the amount of $23,375.09. Compl. ¶ 28 and Ex. 3. At the time the parties executed Amendment No. 1, the remaining balance owed on the Purchase Price was $856,437.90. Compl. Ex. 3.

15.    After execution of Amendment No. 1, Defendant made two more payments of $23,375.09 to Plaintiff, one on December 21, 2007 and one on January 21, 2008. Complaint ¶ 35.

16.    Due to an exercise of subordination rights by Defendant's primary lending bank, Defendant has not made a payment under Amendment No. 1 since January 21, 2008. Complaint ¶¶ 33-37, 42.

17.    The remainder due under Amendment No. 1, which plaintiff seeks to accelerate as his alleged damages in this action, exceeds $75,000.

18.    Under 28 U.S.C. § 1441 and other applicable statutes, all of which Defendant has complied with, this Cause of Action is removable to the United States District Court for the Southern District of New York.

WHEREFORE, Defendant respectfully removes this action from the Supreme Court of the State of New York, County of New York, Case No. 106546/08, to this Court pursuant to 28 U.S.C. § 1441.

Respectfully Submitted,

_____

Michael A. Kalish
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York  10177-1211
Phone: 212-351-3738
Fax:    212-878-8738


Sean W. Colligan
Jacy J. Hurst Moneymaker
Stinson Morrison Hecker LLP
1201 Walnut Street, Ste. 2900
Kansas City, MO 64106
Phone: 816-842-8600
Fax:    816- 691-3495

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was sent via U.S. mail, postage prepaid, on this ___ day of June, 2008 to:

Seth T. Taube &
Maureen P. Reid
30 Rockefeller Plaza

New York, NY  10112-4498
212-408-2500

Attorneys for Plaintiff,
Joseph Koury

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

JOSEPH KOURY,                                  :

                         Plaintiff,            :        Index No. 106546/08

            -against-                          :

                                               :        **SUMMONS**

XCELLENCE, INC., d/b/a XACT,                   :

                         Defendant.            :

---

To the above-named defendant:

        **You are hereby summoned** and required to serve upon Plaintiff's attorney an answer to the complaint in this action within twenty (20) days after the service of this Summons, exclusive of the day of service, or within thirty (30) days after service is complete if this Summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

        The basis of the venue designated is § 503(a), which permits the Plaintiff to designate any county when none of the parties reside in the state.

Dated: New York, New York
      May 12, 2008

Respectfully submitted,

BAKER BOTTS L.L.P.

By: _____
     Seth T. Taube
     Maureen P. Reid

30 Rockefeller Plaza
New York, New York 10112-4498
(212) 408-2500

Attorneys for Plaintiff
Joseph Koury

NEW YORK
COUNTY CLERK'S OFFICE

MAY 12 2008

NOT COMPARED
WITH COPY FILE

NY01:204642.1                    1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

JOSEPH KOURY,

                    Plaintiff,

        -against-

XCELLENCE, INC., d/b/a XACT,

                    Defendant.

---

Index No. 106546/08

**COMPLAINT**

Plaintiff Joseph Koury, by his attorneys, Baker Botts L.L.P., complaining of Defendant Xcellence, Inc., d/b/a Xact, hereby alleges as follows:

## PRELIMINARY STATEMENT

1.      Defendant is unjustifiably withholding monthly payments due to Plaintiff Joseph Koury in exchange for the sale of Mr. Koury's reproduction services business to Defendant. Due to the restrictive covenant included in the purchase agreement at Defendant's insistence, Mr. Koury is currently substantially reliant upon payments from Defendant to support himself and his family.  Defendant cannot have it both ways.

2.      In the face of unreasonable and fabricated demands by Defendant regarding alleged violations of the restrictive covenant, and in order to resolve the matter quickly and minimize any financial hardship to him through Defendant's unjustified withholding of his monthly payments under the agreement, Mr. Koury quit a job he took following the sale of his business -- a job in which he had every right to take under the terms of the parties agreement. He also agreed to a reduction in the total amount due to him under the purchase agreement.

3.     In return for Mr. Koury's generous cooperation, Defendant (1) gave him false representations on several occasions; (2) has ceased payments to him during two successive subordination periods less than one month apart; (3) refuses to provide Mr. Koury with those payments not made during the subordination periods; and (4) hid its true financial situation from Mr. Koury when he was asked to sign a second subordination agreement.

4.     Defendant has also breached its fiduciary duties to Plaintiff, in that, upon information and belief, Defendant is and has been insolvent for several months, has made misrepresentations to its lenders, and has failed to take the actions necessary to protect Mr. Koury as a creditor of Defendant.

5.     Mr. Koury is seeking a declaration that the Defendant has breached the purchase agreement and that the restrictive covenant is void.  Plaintiff seeks payment of all monies due him, with interest.

## PARTIES

6.     Plaintiff Joseph Koury is an individual residing at 18 Club Way, Red Bank, New Jersey 07701.  Mr. Koury was a member of Accurate Repro, LLC, a reproduction services company, until he sold his interest in that company to Xcellence, Inc., d/b/a Xact, on or about May 6, 2006.

7.     Defendant Xcellence, Inc., d/b/a Xact, is a corporation formed under the laws of Missouri with its principal place of business located at 5800 Foxridge Drive, Suite 406, Mission, Kansas  66202.  Xcellence, Inc., d/b/a Xact, is in the business of reproduction services.

## JURISDICTION AND VENUE

8.      Under 11 of the Purchase Agreement, the laws of the State of New York govern all rights and obligations under the Purchase Agreement, as well as the enforcement, validity and performance of the Purchase Agreement.

9.      Defendant regularly transacts business in the State of New York, and particularly in New York County, and, thus, has subjected itself to jurisdiction in this Court.

## FACTUAL BACKGROUND

**A.    The Purchase Agreement**

10.     Prior to May 3, 2006, Mr. Koury was a member of Accurate Repro, LLC.

11.     On May 3, 2006, Xcellence, Inc., d/b/a Xact (hereinafter "Xact") and Mr. Koury entered into a Purchase Agreement in order to terminate Mr. Koury's business relationship with Accurate Repro and in order for Xact to purchase all of Mr. Koury's rights, title and interest in Accurate Repro, LLC. *See* Ex. 1.

12.     Under the Purchase Agreement, Xact agreed to pay Mr. Koury a purchase price of $1,350,000 (the "Purchase Price") in exchange for Mr. Koury's membership interest in Accurate Repro. *See id.* at ¶ 3.

13.     The Purchase Price was to be paid on a deferred basis over a sixty (60) month period, together with interest on the unpaid portion at the rate of 9% per year. *See id.* The schedule of payments was attached as an exhibit to the Purchase Agreement. Xact agreed to pay sixty (60) consecutive monthly installments of $28,023.78 each, with the first payment to be made on May 3, 2006, and the last payment to be made on or before April 3, 2011. *See id.*

14.     The Purchase Agreement contains the following provision:

"The rights of Koury hereunder, including the right to receive payment of the Purchase Price and interest thereon, shall be

subordinate to the rights and claims of all holders of indebtedness for borrowed money of [Accurate Repro] and/or of Xact. In this regard, Koury agrees that the subordination provisions set forth in Exhibit C hereto shall govern Koury's rights hereunder. Further, Koury agrees to enter into any further subordination agreement that may be required by any lender of [Accurate Repro] and/or Xact." *See id.* at ¶ 4.

15.    Mr. Koury entered into a subordination agreement subsequent to the Purchase Agreement.

16.    In paragraph 7(b), Mr. Koury agreed that:

"for a period of three (3) years after the Closing, Koury will not, directly or indirectly, as owner, shareholder, member, partner, consultant, co-venturer or otherwise, own, manage, operate, control, be employed by, participate in, or be connected in any manner with, the ownership, management, operation or control of any business that is in competition with Xact's and/or the [Accurate Repro's] business in Markets served by Xact and/or the [Accurate Repro], …" *See id.* at ¶ 7(b).

17.    "Markets" were listed on Exhibit D to the Purchase Agreement and did not include New Jersey. *See* Ex. 1, Ex. D.

18.    In addition to compensating Mr. Koury for selling his interest in Accurate Repro, the Purchase Price included paying for Mr. Koury's agreement not to compete with Xact.

**B.    Subsequent Non-Prohibited Employment**

19.    Following the Purchase Agreement, Mr. Koury had conversations with Robert Polus, Chairman and Chief Executive Officer of Xact, regarding potential job opportunities for Mr. Koury. Mr. Koury consulted with Polus with regard to one particular position offered to him in Philadelphia, a market prohibited under the Purchase Agreement. Polus suggested that Xact would be willing to allow Mr. Koury to take the position in return for a reduction in the Purchase Price. Ultimately Mr. Koury turned down that offer, as well as other lucrative offers from companies serving markets prohibited under the Purchase Agreement.

20.    On or about July 2, 2007, Mr. Koury began working for Everest Document Solutions ("Everest"), a reproduction services company headquarters in Newark, New Jersey; a market not prohibited under the Purchase Agreement.  Mr. Koury was open and honest with regard to his new position and, based on previous discussions he had had with Polus, Mr. Koury believed his new job was acceptable to Xact.

**C.    Xact's Unjustified Excuses for Failure to Comply with the Purchase Agreement and Its Breach of Fiduciary Duty**

**1.    Invented Violation of Restrictive Covenant**

21.    On or about July 30, 2007, Xact informed Mr. Koury that it considered his employment at Everest a breach of paragraph 7(b) of the Purchase Agreement, despite the fact that Mr. Koury was not working in any prohibited markets and had received assurances from Polus that such a job would be acceptable to Xact.

22.    Xact claimed that it was entitled to terminate payments to Mr. Koury under paragraph 3 of the Purchase Agreement based on Mr. Koury's alleged breach of the restrictive covenant.

23.    Xact initially demanded $300,000 from Mr. Koury.  Xact claimed unspecified alleged damages from Mr. Koury's employment at Everest, as well as damages stemming from allegedly undisclosed liabilities (specifically, copy machines that Accurate Repro had leased), and damages relating to an EEOC claim by a former employee of Xact.  Curiously, Xact also claimed damages from competitive activities by Mr. Koury relating to Mr. Koury's "brother's litigation support firm in Philadelphia," despite the fact that Mr. Koury does not have a brother and he never engaged in any competitive activities in Philadelphia (or anywhere else).

24.    While recognizing the fact that Xact's claims were meritless because his employment at Everest in New Jersey was not in violation of the Purchase Agreement and,

regardless, he had not engaged in any competitive activities, Mr. Koury sought to avoid potential litigation and loss of payments due to him under the Purchase Agreement. Therefore, Mr. Koury quit his job with Everest on or about August 2, 2007.

25.     During his mere one month employment with Everest, Mr. Koury did not make any business contacts or solicit any business for Everest. Mr. Koury did not engage in any activity whatsoever that could be considered competitive or hurtful to Xact. Therefore, Xact did not suffer any damages as a result of Mr. Koury's brief employment with Everest.

26.     In response to a request by Xact, Mr. Koury even provided an affidavit attesting to his departure from Everest and offered Xact an opportunity to speak with his former supervisor at Everest. *See* Ex. 2.

27.     Mr. Koury went even further in order to resolve the dispute and offered to reduce the principal amount due to him under the Purchase Agreement if Xact continued his monthly payments.

28.     The parties negotiated for several weeks until they eventually settled the matter on or about September 29, 2007, by entering into "Amendment No. 1 to Purchase Agreement." *See* Ex. 3. Pursuant to the Amendment, Mr. Koury agreed to a $190,193.40 reduction in principal due to him under the Purchase Agreement. The Purchase Price was therefore amended to be $1,159,806.60.

**2.     First Bank Subordination**

29.     Just days after the execution of the Amendment, on or about October 3, 2007, Mr. Koury received notification from Commerce Bank (in a letter dated <u>before</u> the Amendment) that Xact was in default under one or more agreements between Xact and Commerce and that

Mr. Koury's payments from Xact were being subordinated. *See* Ex. 4. Xact's counsel had advised Mr. Koury that he was not aware of any subordination on September 29, 2007.

30.    Xact's last payment to Mr. Koury prior to that subordination was on July 3, 2007.

31.    Xact indicated it was in the process of refinancing with Marshall & Ilsley Bank ("M&I") and advised Mr. Koury that his monthly payments would resume following the completion of the refinancing. However, Xact told Mr. Koury that it would not be providing him with the monthly payments that were not paid to him during the subordination restriction period (i.e., all payments between, and including, August 3, 2007 and when Xact resumes payments).

32.    Because the Purchase Agreement contains an end date for payment of the Purchase Price (April 3, 2011), it is clear that the parties' intention was that all missed payments due to subordination would be paid when subordination is resolved.

### 3.    The Second Bank Subordination and Xact's Insolvency

33.    In December 2007, pursuant to the Purchase Agreement, Defendant insisted on Mr. Koury executing a new subordination agreement ("Second SA") as part of its refinancing with M&I, and refused to pay Mr. Koury until it was executed.

34.    The draft Second SA entitled Mr. Koury to examine Defendant's financial condition before executing the document. However, when Mr. Koury demanded such records on December 11, 2007, Defendant suspiciously refused Mr. Koury access to its financials and instead opted to remove the language from the Second SA that would permit such inspection.

35.    Forced to sign the Second SA to receive any payment, Mr. Koury executed the Second SA at the end of December 2007. Thereafter, Mr. Koury received two payments, on December 21, 2007, and January 21, 2008.

36.    Barely two months after the renewed payments began, Defendant failed to pay the February 2008 payment in breach of the Purchase Agreement.

37.    On February 21, 2008, Mr. Koury notified Defendant of the missed payment. Only then was Mr. Koury notified that on January 24, 2008, a few weeks after the Second SA was signed, his payments had again been subordinated.

38.    Thus, Xact went into covenant default on its refinancing agreement with M&I less than one month after the agreement was signed. Upon information and belief, Xact failed to provide M&I with accurate financial statements in procuring its loan, which would explain the guarded refusal to allow Mr. Koury access to those documents during the negotiation of the Second SA.

39.    Therefore, Xact was apparently insolvent beginning at least December 2007 when it sought refinancing from M&I and obtained such refinancing based upon misinformation and by hiding its true financial condition.

40.    Such insolvency triggered certain fiduciary duties to Xact's creditors -- Mr. Koury being one of those creditors. Beginning at least in December 2007, Xact had and still has a fiduciary duty to Mr. Koury to take whatever steps are necessary to pay him by liquidating its assets or selling its business. Xact breached that fiduciary duty.

41.    In fact, Polus told Mr. Koury during initial negotiations in 2006 and again in May 2007, that the entire business would be sold by the third quarter of 2007.

42.    Mr. Koury has received no payments since July 2007, except for the two payments on December 21, 2007 and January 21, 2008. Defendant has reiterated its position that it is not obligated to pay the missed payments due to the subordination.

43.    By reason of Defendant's position, Mr. Koury is being deprived of at least tens of thousands of dollars and perhaps hundreds of thousands of dollars, depending on when Xact decides to resume payments to Mr. Koury. While awaiting his payments to begin again, Mr. Koury is unable to earn sufficient income to support his family.

44.    Defendant has admitted that the business Defendant bought was profitable, and that it was the pre-existing business of Defendant that was struggling.

45.    Xact is effectively treating the subordination as a waiver by Mr. Koury, releasing Xact from its obligation to pay him the Purchase Price. Such a position is without foundation. Xact should not be permitted to retain Mr. Koury's business at a substantially reduced price, while restraining him from working in the industry at the same time.

**4.    False Representations Regarding the Payment of Taxes**

46.    During the negotiation of the Purchase Agreement, Polus informed Mr. Koury that Xact would be responsible for all taxes associated with the transaction to purchase Accurate Repro as Accurate Repro's retained earnings would become Xact's and, thus, Xact should pay the taxes on those earnings.

47.    Nevertheless, despite assurances to the contrary, Xact refused to pay Mr. Koury's taxes for his 2006 K-1, which amounted to $117,000.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT
### (Breach of Contract)

48.     Plaintiff repeats and realleges each and every allegation above with the same force and effect as if set forth fully herein.

49.     The Purchase Agreement sets forth valid and enforceable obligations of Defendant.

50.     Plaintiff duly performed all of his obligations under the Purchase Agreement.

51.     Defendant breached its obligations under the Purchase Agreement by its continued failure to pay Plaintiff the proceeds of the business he sold to Defendant, including those payments missed during the first subordination period.

52.     Plaintiff has suffered damages as a direct and proximate result of Defendant's breaches, and is entitled to recover those damages in an amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT
### (Declaratory Judgment)

53.     Plaintiff repeats and realleges each and every allegation above with the same force and effect as if set forth fully herein.

54.     Plaintiffs seek a declaration that Defendant is in violation of the Purchase Agreement by failing to pay Plaintiff monthly payments since July 3, 2007 (with limited exception), and, thus, because of Defendant's breach, Plaintiff is no longer restrained from pursuing and obtaining employment in markets competitive to Defendant's business.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT
### (Breach of Fiduciary Duty)

55.     Plaintiff repeats and realleges each and every allegation above with the same force and effect as if set forth fully herein.

56.    A fiduciary relationship between Defendant and Plaintiff existed when Defendant became insolvent in or around December 2007, and still exists today.

57.    Defendant breached that fiduciary duty to Mr. Koury by failing to take the steps necessary to pay Mr. Koury the money he is owed by selling Xact's assets.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.    Damages in the amount of all accelerated sums due under the Purchase Agreement, plus the loss he suffered as a result of Defendant's conduct, plus prejudgment interest thereon;

B.    Punitive damages in an amount to be determined at trial;

C.    Declaratory judgment be entered that Defendant is in violation of the Purchase Agreement and Plaintiff is no longer restrained by the employment restriction in the Purchase Agreement;

D.    Disbursements, costs and expenses, including reasonable attorneys' fees; and

E.    Any other relief that the Court finds just and reasonable.

Dated: New York, New York
       May 12, 2008

Respectfully submitted,

BAKER BOTTS L.L.P.

By: _____
       Seth T. Taube
       Maureen P. Reid

30 Rockefeller Plaza
New York, New York  10112-4498
(212) 408-2500

Attorneys for Plaintiff
Joseph Koury

Exhibit A

## PURCHASE AGREEMENT

THIS PURCHASE AGREEMENT (this "agreement") is made and entered into this _____ day of May, 2006 by and among Joseph E. Koury ("Koury"), Xcellence, Inc., a Missouri corporation ("Xact") and Accurate Repro, LLC, a Missouri limited liability company (the "Company").

RECITALS:

A.    Koury and Xact, as the members of the Company have entered into an Operating Agreement, dated January 3, 2000 (the "Operating Agreement") respecting the Company.

B.    Koury and the Company have entered into an Employment Agreement, dated January 3, 2000 (the "Employment Agreement").

C.    Koury, the Company and Xact desire to terminate Koury's business relationships with the Company through the Company's purchase of Koury's membership interest in the Company and the termination of Koury's employment with the Company.

AGREEMENTS:

1.    (a)    Unless otherwise defined herein, all capitalized terms shall have the same definition as set forth in the Operating Agreement.

(b)    The closing of the purchase of Koury's Membership Interest in the Company (as provided in Section 2 below) and the other transactions contemplated herein (the "Closing") shall take place on May 3, 2006 at 4:00 p.m. at the offices of the Company or at such earlier time as Xact shall notify Koury. At the Closing, the parties shall execute such instruments and documents as may be appropriate to carry out the purpose and intent of this Agreement.

(c)    Pending Closing, the Company and Xact intend to perform such due diligence efforts as they deem appropriate, and in connection therewith, Koury shall cooperate in all respects with the Company and Xact.

(d)    In the event the Company or Xact determine that they or either of them deem it imprudent to proceed with the purchase of Koury's Membership Interest and the other transactions provided for herein, they shall have the right to terminate this Agreement by notice to Koury given prior to 4:00 p.m. on May 1, 2006.

2.    At the Closing, Koury shall assign, sell and transfer to the Company all of Koury's right, title and interest in, to and under Koury's Membership Interest in the Company. Koury hereby represents and warrants to the Company and to Xact that (a) Koury owns the Membership Interest transferred hereby free and clear of all liens, claims and encumbrances, (b) the Company is acquiring such Membership Interest from Koury free and clear of all liens, claims and encumbrances, (c) the Company has no liabilities or obligations, direct or indirect,

DB03/803937.0007/6803169.11

contingent or liquidated, other than (w) liabilities which in the aggregate do not exceed $10,000, (x) those set forth on the Company's balance sheet, dated March 31, 2006 attached hereto as Exhibit A, except as disclosed in writing by Koury to Xact, (y) liabilities described on Exhibit B hereto, and (z) those arising from circumstances disclosed in writing by Koury to Xact; (d) the Company is not in violation of and has not violated any law, rule, regulation or order applicable to the Company, except as has been disclosed in writing by Koury to Xact, (e) Koury has full right, power and authority to enter into and perform this agreement and his entry into and performance of this agreement does not violate any law, rule, regulation, order, contract, agreement or commitment applicable to Koury or to the Company and (f) he has disclosed to Xact any and all information that would be material to a purchaser of Koury's Membership Interest, as provided herein. The foregoing representations and warranties shall be true as of the Closing, and by his Closing of this Agreement, Koury shall be deemed to have so represented and warranted to the Company and Xact. The parties agree that, for purposes of this agreement, no information or knowledge which Koury has concerning the Company shall, solely by reason of the fact that Koury has such information or knowledge, be deemed to be within the knowledge of the Company.

3.    At the Closing, the Company shall accept the aforementioned assignment, sale and transfer of Koury's Membership Interest and, in exchange therefor, the Company agrees to pay $1,350,000 (the "Purchase Price"). The Purchase Price shall be payable on a deferred basis over a sixty (60) month period, together with interest on the unpaid portion at the rate of 9% per annum, a schedule of which his attached hereto as Exhibit E. Accordingly, the Company shall pay sixty (60) consecutive monthly installments of $28,023.78 each, with the first such payment to be made on May 3, 2006 and the last such payment to be made on April 3, 2011; provided, however, in the event there shall be an Exit Event, the unpaid portion of the Purchase Price shall be payable within five (5) days after the occurrence of such Exit Event; provided further, in the event Koury materially violates any provision of Section 7(a) of this Agreement or violates in any respect any provision of Section 7(b) or Section 7(c) of this Agreement, the Company shall be excused from making any further payments of the Purchase Price (and interest thereon), and its obligation to make such further payments shall be extinguished and of no further force or effect (it being understood and agreed that such extinguishment of the Company's obligation to pay the remainder of the Purchase Price shall not be the sole or exclusive remedy available to the Company for any such violation, and the Company shall have such other remedies at law or in equity as may be available to the Company with respect to any such violation). For purposes hereof, an "Exit Event" shall mean (a) the sale of all or substantially all of the assets of the Company or (b) the sale of 51% or more of the Membership Interest in the Company by Xact other than a sale or transfer to an entity controlled by Xact. Xact hereby guarantees the Company's obligations under this Section 3.

4.    The rights of Koury hereunder, including the right to receive payment of the Purchase Price and interest thereon, shall be subordinate to the rights and claims of all holders of indebtedness for borrowed money of the Company and/or of Xact. In this regard, Koury agrees that the subordination provisions set forth in Exhibit C hereto shall govern Koury's rights hereunder. Further, Koury agrees to enter into any further subordination agreement that may be required by any lender of the Company and/or Xact.

DB03/803937.0007/6803169.11

2

5.      Koury and the Company agree that at the Closing, Koury's employment with the Company shall automatically terminate.  At Closing, Koury shall deliver to the Company all Company credit cards, keys, telephones, access cards, computers, documents (whether in hard copy or stored electronically on a computer, disk, cd-rom or any other means) and any other Company property, including the Mercedes 500 automobile.  At the Closing, the Company shall deliver to Koury a check in an amount equal to all compensation and other amounts (net of normal withholdings) owed to Koury as of the Closing under the Employment Agreement and as a result of his being an employee of the Company.  The Company agrees to reimburse Koury for all out of pocket expenses incurred by him on behalf of the Company and as provided in the Employment Agreement.  The Company will continue to provide health benefits to Koury and his family until the Purchase Price has been paid.

6.      [Not Used]

7.      (a)      Following Closing, Koury agrees that he will not disclose any Confidential Information to any person, firm, corporation, association or other entity for any reason or purpose whatsoever.  As used herein "Confidential Information" shall mean information that is owned by or licensed to, and of value to, the Company and/or Xact and is treated as confidential by the Company and/or Xact, including, but not limited to, technical or non-technical data, formulas, patterns, compilations, programs, devices, methods, techniques, drawings, processes, financial data, financial plans or financial information, product plans, lists of actual or potential customers or suppliers, future business plans, business strategies, and advertising or marketing campaigns and related information.  Confidential Information shall not include any information that (a) was or becomes generally available to the public other than as a result of a disclosure by Koury, (b) was available to Koury on a non-confidential basis prior to its disclosure to Koury by the Company and/or Xact, or (c) becomes available to Koury on a non-confidential basis from a source other than the Company and/or Xact, provided that such source is not prohibited from disclosing such information by a contractual or legal obligation to the Company and/or Xact.

(b)      Koury agrees that for a period of three (3) years after the Closing, Koury will not, directly or indirectly, as owner, shareholder, member, partner, consultant, co-venturer or otherwise, own, manage, operate, control, be employed by, participate in, or be connected in any manner with, the ownership, management, operation or control of any business that is in competition with Xact's and/or the Company's business in Markets served by Xact and/or the Company, except that this provision shall not apply to Koury's ownership of up to 5% of the issued and outstanding securities of any corporation whose securities are registered under the Securities Exchange Act of 1934 and which are traded publicly on any national securities exchange.  Markets are defined as the Metropolitan Statistical Areas of the cities listed on Exhibit D.

(c)      For a period of three (3) years after the Closing, Koury will not, directly or indirectly (i) entice or induce or in any manner influence any person who is an employee of the Company or Xact to leave such employment or (ii) divert or attempt to divert from doing business with the Company and/or Xact any individual, firm, corporation or other entity which on the date hereof was, or within one (1) year prior hereto had been, a customer or client of the Company and/or Xact.

(d)     Koury acknowledges and agrees that the Company's remedy at law for a breach or threatened breach of any of the provisions of this Section 7 would be inadequate and, in recognition of that fact, in the event of any such breach or threatened breach, it is agreed that, in addition to its remedy at law, the Company shall be entitled to, and Koury agrees not to oppose the Company's request for, equitable relief in the form of specific performance, temporary restraining order, temporary or permanent injunction or any other equitable remedy which may then be available. Nothing herein contained shall be construed as prohibiting the Company from pursuing any other remedies available to it for such breach or threatened breach, it being recognized that a violation of this Section 7 by Koury shall extinguish the Company's obligation to make any further payments of the Purchase Price, as provided in Section 3 above.

(e)     The rights of the Company and/or Xact under this Section 7 shall be assignable, including, without limitation, in connection with a sale or transfer of the business or ownership of the Company or Xact.

8.     Koury acknowledges and agrees that the Company has no liability or obligation to him (including any right to indemnification under law or otherwise), other than as expressly provided in this agreement. Koury hereby agrees to indemnify and hold harmless the Company, its officers, employees and members (including Xact) from any and all claims, losses, liabilities, fines, assessments, penalties, obligations and costs threatened or imposed against the Company (as well as any attorney's fees or costs of investigation associated with such claims) (each, a "Loss") related to or arising out of (a) any breach of Section 7 of this agreement or the failure of any representation or warranty made by Koury in this agreement, (b) the employment of Mary Koury by the Company or the termination of her employment with the Company as contemplated in Section 17 hereof, or (c) any and all third party claims resulting from actions taken by Koury, or at his direction, on behalf of the Company or otherwise (whether or not taken in the scope of his employment) on or prior to the date hereof other than (i) certain actions taken with respect to one customer in the New York market, which actions Koury represents to the Company have been disclosed to the Company completely, truthfully and in no way misleading, and (ii) actions taken in good faith and in furtherance of the best interest of the Company; provided, however any actions taken by Koury or at his direction (but not including those actions referred to in the foregoing clause (ii)) that would be a violation of any law that could result in criminal sanctions, fines or assessment to Koury, the Company or any person that has a business relationship with the Company shall in all respects be covered and included in Koury's obligation to indemnify hereunder; provided, however, notwithstanding the foregoing (x) Koury shall only be liable to the Company for legal fees incurred by the Company in connection with a claim by a third party if the Company has been found liable for damages, fines, assessments or penalties to such third party by a court of competent jurisdiction, and (y) Koury shall not be liable to the Company for consequential, special, punitive or exemplary damages incurred by the Company unless the same have been awarded to a third party as a result of a legal proceeding before a court of competent jurisdiction. Koury's obligations under this Section 8 shall be limited to the Purchase Price hereunder, $1,350,000. Koury shall not be required to indemnify for any Loss to the extent the Company receives insurance recoveries with respect to such Loss. The Company agrees that it will not exercise any right of setoff it may have with respect to its obligation to make payments of the Purchase Price under Section 3 above unless and until (1) in the case of Losses relating to claims, liabilities, fines, penalties, etc. by or to third parties, the Company has actually sustained a Loss pursuant to a settlement or plea bargaining agreement or pursuant to a

DB03/803937 0007/6803169.11

court order, judgment or verdict, and (2) in the case of a Loss resulting from a breach of Sections 8(a) and 8(b) above, when the Loss has actually been sustained by the Company.

9.    If any provision of this agreement is held to be illegal, invalid or unenforceable to any extent, (i) the legality, validity and enforceability of the remainder of this agreement shall not be affected thereby, (ii) said provision shall be modified by the court to the extent necessary to render it not illegal, invalid or unenforceable, and (iii) this agreement shall continue in full force and effect as modified and shall be enforced to the greatest extent permitted by law.

10.    Any notice, request, consent or communication pursuant to this agreement must be given in writing by (a) personal delivery, (b) expedited, recognized delivery service with proof of delivery, or (c) United States Mail, postage prepaid, certified mail, return receipt requested, sent to the intended addressee at the address set forth below, or to such other address or to the attention of such other person as the addressee designates by written notice sent in accordance with this provision, and will be deemed to have been given either at the time of personal delivery, or, in the case of expedited delivery service or mail, as of the date of first attempted delivery at the address and in the manner provided herein. Unless changed in accordance with the preceding sentence, the addresses for notices and deliveries given pursuant to this agreement are as follows:

If to Koury:

Joe Koury
18 Club Lane
Red Bank, NJ 07701

If to the Company or Xact:

Robert Polus
Xact IDS
5410 West 61st Place
Mission, Kansas 66205

with a copy to:

Sean W. Colligan
Stinson Morrison Hecker LLP
1201 Walnut, Suite 2900
Kansas City, Missouri 64106

11.    This agreement and all rights and obligations of the parties hereunder is governed by, and is to be construed and interpreted in accordance with, the laws of the State of New York applicable to agreements made and to be performed entirely within such State, including all matters of enforcement, validity and performance, and without giving effect to the principles of conflict of laws to the contrary.

BP

12.   The parties hereto represent that in the negotiating and drafting of this agreement they have been represented by and relied upon the advice of counsel of their choice.  The parties affirm that their counsel have both had a substantial role in the drafting and negotiation of this agreement and, therefore, this agreement shall be deemed drafted by all of the parties hereto and the rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this agreement or any attachment hereto.

13.   Each of the parties hereby agrees to execute and deliver such other documents or agreements and take such other actions as may reasonably be necessary or desirable for consummation of the transactions contemplated by this agreement or for the purposes of this agreement.

14.   All representations, warranties, covenants, and agreements of each of the parties will survive the consummation of the transactions contemplated in this agreement and will not be affected by any investigation by or on behalf of the other party.

15.   Nothing expressed or referred to in this agreement will be construed to give any person other than the parties to this agreement any legal or equitable right, remedy, or claim under or with respect to this agreement or any provision of this agreement. This agreement and all of its provisions and conditions are for the sole and exclusive benefit of the parties to this agreement and their successors and assigns.

16.   This agreement constitutes the entire understanding of the parties with respect to the subject matter hereof, including any rights the Company has with respect to the purchase of Koury's Membership Interest or the purchase price therefor.

17.   Concurrently with the Closing, Mary Koury shall have resigned and terminated her employment with the Company and provided a release of the Company from any and all claims she may have against the Company.

[The balance of this page intentionally left blank.]

18.    The Company agrees that, not more than thirty (30) days following the Closing, it will use its reasonable commercial efforts to cause the release of any and all personal guarantees of Koury of Company indebtedness to bank lenders and will provide Koury evidence thereof.

IN WITNESS WHEREOF, the parties have made and entered into this agreement the day and year first above written.

_____
Joseph E. Koury

XCELLENCE, INC.

_____
Robert Polus
Chairman of the Board
Xcellence, Inc.

ACCURATE REPRO, LLC

By:    Xcellence, Inc. and Joseph E. Koury, members of Accurate Repro, LLC

By:    _____
        Robert Polus
        Chairman of the Board
        Xcellence, Inc.

By:    _____
        Joseph E. Koury

Exhibit A      Company Balance Sheet
Exhibit B      Other Liabilities of the Company
Exhibit C      Form of Subordination Agreement
Exhibit D      Markets
Exhibit E      Amortization Schedule for Purchase Price

DB03/803937.0007/6803169.11

<u>EXHIBIT B</u>

## <u>OTHER LIABILITIES OF THE COMPANY</u>

Wayne Dunn suit

| | | |
|---|---|---|
| Sidley Austin invoice | 11-36382 | $16,672.76 |
| Morgan Lewis invoice | 11-35810 | $ 4,246.00 |
| | 11-35993 | $ 2,870.00 |
| Port Authority | 11-33571 | $ 7,541.58 |

| Principal | 1,350,000.00 | | Number of months | 60.00 |
|---|---|---|---|---|
| Period to Start | 1 | | Payments per year | 12 |
| Annual Interest Rate | 9.00 | | | |
| Month to Start | 5 | | PAYMENT PER PERIOD | 28,023.78 |
| | | | TOTAL OF PAYMENTS | 1,681,426.77 |

| Period | Month | Year | Beginning Principal Balance | Interest Paid | Yearly Interest | Principal Paid | Yearly Principal | Remaining Principal Balance |
|---|---|---|---|---|---|---|---|---|
| 1 | 5 | 2006 | 1,350,000.00 | 10,125.00 | - | 17,898.78 | - | 1,332,101.22 |
| 2 | 6 | 2006 | 1,332,101.22 | 9,990.76 | - | 18,033.02 | - | 1,314,068.20 |
| 3 | 7 | 2006 | 1,314,068.20 | 9,855.51 | - | 18,168.27 | - | 1,295,899.93 |
| 4 | 8 | 2006 | 1,295,899.93 | 9,719.25 | - | 18,304.53 | - | 1,277,595.40 |
| 5 | 9 | 2006 | 1,277,595.40 | 9,581.97 | - | 18,441.81 | - | 1,259,153.59 |
| 6 | 10 | 2006 | 1,259,153.59 | 9,443.65 | - | 18,580.13 | - | 1,240,573.46 |
| 7 | 11 | 2006 | 1,240,573.46 | 9,304.30 | - | 18,719.48 | - | 1,221,853.98 |
| 8 | 12 | 2006 | 1,221,853.98 | 9,163.90 | 77,184.34 | 18,859.87 | 147,005.89 | 1,202,994.11 |
| 9 | 1 | 2007 | 1,202,994.11 | 9,022.46 | - | 19,001.32 | - | 1,183,992.78 |
| 10 | 2 | 2007 | 1,183,992.78 | 8,879.95 | - | 19,143.83 | - | 1,164,848.95 |
| 11 | 3 | 2007 | 1,164,848.95 | 8,736.37 | - | 19,287.41 | - | 1,145,561.54 |
| 12 | 4 | 2007 | 1,145,561.54 | 8,591.71 | - | 19,432.07 | - | 1,126,129.47 |
| 13 | 5 | 2007 | 1,126,129.47 | 8,445.97 | - | 19,577.81 | - | 1,106,551.66 |
| 14 | 6 | 2007 | 1,106,551.66 | 8,299.14 | - | 19,724.64 | - | 1,086,827.02 |
| 15 | 7 | 2007 | 1,086,827.02 | 8,151.20 | - | 19,872.58 | - | 1,066,954.44 |
| 16 | 8 | 2007 | 1,066,954.44 | 8,002.16 | - | 20,021.62 | - | 1,046,932.82 |
| 17 | 9 | 2007 | 1,046,932.82 | 7,852.00 | - | 20,171.78 | - | 1,026,761.04 |
| 18 | 10 | 2007 | 1,026,761.04 | 7,700.71 | - | 20,323.07 | - | 1,006,437.97 |
| 19 | 11 | 2007 | 1,006,437.97 | 7,548.28 | - | 20,475.49 | - | 985,962.47 |
| 20 | 12 | 2007 | 985,962.47 | 7,394.72 | 107,788.56 | 20,629.06 | 237,660.70 | 965,333.41 |
| 21 | 1 | 2008 | 965,333.41 | 7,240.00 | - | 20,783.78 | - | 944,549.63 |
| 22 | 2 | 2008 | 944,549.63 | 7,084.12 | - | 20,939.66 | - | 923,609.97 |
| 23 | 3 | 2008 | 923,609.97 | 6,927.07 | - | 21,096.70 | - | 902,513.27 |
| 24 | 4 | 2008 | 902,513.27 | 6,768.85 | - | 21,254.93 | - | 881,258.34 |
| 25 | 5 | 2008 | 881,258.34 | 6,609.44 | - | 21,414.34 | - | 859,844.00 |
| 26 | 6 | 2008 | 859,844.00 | 6,448.83 | - | 21,574.95 | - | 838,269.05 |
| 27 | 7 | 2008 | 838,269.05 | 6,287.02 | - | 21,736.76 | - | 816,532.28 |
| 28 | 8 | 2008 | 816,532.28 | 6,123.99 | - | 21,899.79 | - | 794,632.50 |
| 29 | 9 | 2008 | 794,632.50 | 5,959.74 | - | 22,064.04 | - | 772,568.46 |
| 30 | 10 | 2008 | 772,568.46 | 5,794.26 | - | 22,229.52 | - | 750,338.95 |
| 31 | 11 | 2008 | 750,338.95 | 5,627.54 | - | 22,396.24 | - | 727,942.71 |
| 32 | 12 | 2008 | 727,942.71 | 5,459.57 | 76,330.44 | 22,564.21 | 259,954.91 | 705,378.50 |
| 33 | 1 | 2009 | 705,378.50 | 5,290.34 | - | 22,733.44 | - | 682,645.06 |
| 34 | 2 | 2009 | 682,645.06 | 5,119.84 | - | 22,903.94 | - | 659,741.12 |
| 35 | 3 | 2009 | 659,741.12 | 4,948.06 | - | 23,075.72 | - | 636,665.40 |
| 36 | 4 | 2009 | 636,665.40 | 4,774.99 | - | 23,248.79 | - | 613,416.61 |
| 37 | 5 | 2009 | 613,416.61 | 4,600.62 | - | 23,423.16 | - | 589,993.45 |
| 38 | 6 | 2009 | 589,993.45 | 4,424.95 | - | 23,598.83 | - | 566,394.62 |
| 39 | 7 | 2009 | 566,394.62 | 4,247.96 | - | 23,775.82 | - | 542,618.80 |
| 40 | 8 | 2009 | 542,618.80 | 4,069.64 | - | 23,954.14 | - | 518,664.66 |
| 41 | 9 | 2009 | 518,664.66 | 3,889.98 | - | 24,133.79 | - | 494,530.87 |
| 42 | 10 | 2009 | 494,530.87 | 3,708.98 | - | 24,314.80 | - | 470,216.07 |
| 43 | 11 | 2009 | 470,216.07 | 3,526.62 | - | 24,497.16 | - | 445,718.91 |
| 44 | 12 | 2009 | 445,718.91 | 3,342.89 | 51,944.88 | 24,680.89 | 284,340.47 | 421,038.02 |
| 45 | 1 | 2010 | 421,038.02 | 3,157.79 | - | 24,865.99 | - | 396,172.03 |
| 46 | 2 | 2010 | 396,172.03 | 2,971.29 | - | 25,052.49 | - | 371,119.54 |
| 47 | 3 | 2010 | 371,119.54 | 2,783.40 | - | 25,240.38 | - | 345,879.16 |
| 48 | 4 | 2010 | 345,879.16 | 2,594.09 | - | 25,429.69 | - | 320,449.47 |
| 49 | 5 | 2010 | 320,449.47 | 2,403.37 | - | 25,620.41 | - | 294,829.06 |
| 50 | 6 | 2010 | 294,829.06 | 2,211.22 | - | 25,812.56 | - | 269,016.50 |
| 51 | 7 | 2010 | 269,016.50 | 2,017.62 | - | 26,006.16 | - | 243,010.35 |
| 52 | 8 | 2010 | 243,010.35 | 1,822.58 | - | 26,201.20 | - | 216,809.14 |
| 53 | 9 | 2010 | 216,809.14 | 1,626.07 | - | 26,397.71 | - | 190,411.43 |
| 54 | 10 | 2010 | 190,411.43 | 1,428.09 | - | 26,595.69 | - | 163,815.74 |
| 55 | 11 | 2010 | 163,815.74 | 1,228.62 | - | 26,795.16 | - | 137,020.58 |
| 56 | 12 | 2010 | 137,020.58 | 1,027.65 | 16,359.31 | 26,996.13 | 311,013.57 | 110,024.45 |
| 57 | 1 | 2011 | 110,024.45 | 825.18 | - | 27,198.60 | - | 82,825.86 |
| 58 | 2 | 2011 | 82,825.86 | 621.19 | - | 27,402.59 | - | 55,423.27 |
| 59 | 3 | 2011 | 55,423.27 | 415.67 | - | 27,608.11 | - | 27,815.17 |
| 60 | 4 | 2011 | 27,815.17 | 208.61 | 2,070.67 | 27,815.17 | 110,024.45 | 0.00 |
| TOTALS | | | | | 331,678.21 | | 1,350,000.00 | |

**Accurate Repro, LLC**
Balance Sheet Rollup Schedule
Balance Only
For the Period from March 1, 2006 to March 31, 2006

| | Balance |
|---|---|
| **Assets** | |
| **Cash** | |
| 11100 - HSBC Operating Account | 333,885.13 |
| 11200 - HSBC Savings Account (Rent Deposit) | 45,609.92 |
| **Total Cash** | 379,495.05 |
| **Accounts Receivable** | |
| 12000 - Accounts Receivable - Customers | 1,083,141.91 |
| 12250 - Allowance for Doubtful Accounts | -11,122.41 |
| **Total Accounts Receivable** | 1,072,019.50 |
| **Other Receivables** | |
| 12600 - Employee receivables | |
| **Total Other Receivables** | |
| **Prepaid Expenses** | |
| 14010 - Prepaid rent | 20,462.05 |
| 14020 - Prepaid insurance | 26,248.35 |
| 14090 - Prepaid expenses - other | 27,446.53 |
| **Total Prepaid Expenses** | 74,156.93 |
| **Property and Equipment** | |
| 16110 - Furniture and fixtures | 23,559.95 |
| 16210 - Machinery and equipment | 297,524.30 |
| 16220 - Computers and office equipment | 60,409.92 |
| 16500 - Automobiles | 127,094.48 |
| 16600 - Leasehold improvements | 10,876.81 |
| **Total property and equipment** | 519,465.46 |
| **Accumulated Depreciation** | |
| 17110 - A/D - Furniture and fixtures | -13,859.26 |
| 17210 - A/D - Machinery and equipment | -129,668.35 |
| 17220 - A/D - Computers and office equipment | -33,799.77 |
| 17500 - A/D - Automobiles | -55,223.69 |
| 17600 - A/D - Leasehold improvements | -6,217.42 |
| **Total Accumulated Depreciation** | -238,768.49 |
| **Net Property and Equipment** | 280,696.97 |



Accurate Repro, LLC
Balance Sheet Rollup Schedule
Balance Only
For the Period from March 1, 2006 to March 31, 2006

|  | Balance |
|---|---|
| **Other Assets** |  |
| 19110 - Deposits | 74,789.93 |
|  |  |
| **Total Other Assets** | 74,789.93 |
|  |  |
| **Total Assets** | 1,681,158.38 |
|  |  |
| **Liabilities and Stockholders' Equity** |  |
|  |  |
| **Accounts Payable** |  |
| 20100 - Accounts payable - trade | 209,435.61 |
| 20130 - Accounts payable - Xcellence, Inc. | 130,898.16 |
|  |  |
| **Total Accounts Payable** | 340,333.77 |
|  |  |
| **Accrued Expenses** |  |
| 20120 - Customer Refunds Payable | 23,865.27 |
| 20180 - Stale payroll checks | 2,387.59 |
| 20190 - Accounts Payable - Other |  |
| 20230 - Accrued equipment usage | 54,147.30 |
| 20250 - Accrued accounting fees |  |
| 20260 - Other accrued expenses | 36,239.89 |
| 20285 - Accrued vacation / PTO |  |
| 21001 - Sales Tax Payable | 29,162.41 |
| 22100 - Accrued wages | 75,961.60 |
| 22400 - Commissions payable | 33,292.26 |
| 23110 - FICA/Medicare payable - EE | -0.01 |
| 23115 - FICA/Medicare payable - ER | -0.01 |
| 23120 - Federal withholding payable | -71.56 |
| 23130 - State withholding payable | -19.81 |
| 23140 - Local withholding payable | -4.51 |
| 23170 - SUI Tax Payable |  |
| 23210 - Health insurance payable |  |
| 23220 - Dental insurance payable |  |
| 23230 - Garnishments payable |  |
| 23270 - Cafeteria contributions payable |  |
| 23280 - 401(k) contributions payable |  |
| 23310 - Health/life insurance payable |  |
| 23320 - Dental insurance payable |  |
| 23325 - ST Disability premiums payable |  |
| 23330 - LT Disability premiums payable |  |
| 23380 - 401(k) Match payable |  |
| 26000 - Accrued local income taxes | 307.69 |
|  |  |
| **Total Accrued Expenses** | 255,248.40 |



**Accurate Repro, LLC**
Balance Sheet Rollup Schedule
Balance Only
For the Period from March 1, 2006 to March 31, 2006

|  | Balance |
|---|---|
| **Line of Credit** | |
| 29310 - Line of credit - US Bank | 260,000.00 |
| 29320 - Line of credit - Xcellence | |
| | |
| **Total Line of Credit with Bank** | **260,000.00** |
| | |
| **Current portion of long-term debt** | |
| 25000 - Current portion of long-term debt | 9,000.00 |
| | |
| **Total current portion of long-term debt** | **9,000.00** |
| | |
| **Noncurrent liabilities** | |
| 29305 - Non current portion of vehicle note payable | 19,500.00 |
| 29900 - Rent Deposit | 44,381.36 |
| | |
| **Total Noncurrent Liabilities** | **63,881.36** |
| | |
| **Total Liabilities** | **928,463.53** |
| | |
| **Stockholders' Equity** | |
| | |
| **Common stock** | |
| 32100 - Common stock | 49,000.00 |
| | |
| **Total common stock** | **49,000.00** |
| | |
| **Retained earnings** | |
| 38000 - Retained earnings | 884,195.56 |
| 39000 - Current year net income | 19,499.29 |
| | |
| **Total retained earnings** | **903,694.85** |
| | |
| **Total Liabilities and Stockholders' Equity** | **1,881,158.38** |



EXHIBIT D

## MARKETS

| | |
|---|---|
| Akron, OH | Kansas City, MO |
| Atlanta, GA | Los Angeles, CA |
| Austin, TX | Miami, FL |
| Boston, MA | Minneapolis, MN |
| Chicago, IL | New York, NY |
| Cleveland, OH | Philadelphia, PA |
| Columbus, OH | Phoenix, AZ |
| Dallas, TX | San Francisco, CA |
| Denver, CO | Seattle, WA |
| Detroit, MI | St. Louis, MO |
| Houston, TX | Toledo, OH |
| Indianapolis, IN | Washington, DC |

Error! Unknown document property name.

# Exhibit B

## AFFIDAVIT OF JOSEPH E. KOURY

JOSEPH E. KOURY, of full age, duly sworn according to law, upon his oath deposes and says:

1.    I worked as an employee of Everest Document Solutions (EDS) from July 2 , 2007 until August 2, 2007.

2.    I terminated my employment with EDS on August 2 2007.

3.    I have no further affiliation with EDS and have no ownership, partnership or contractual relationship with EDS or its affiliates, or with any other entity that is in competition with XACT and/or the Company's business in the Markets served by Xact and/or the Company. .

JOSEPH E. KOURY

Sworn and Subscribed to
Before me 10th day of
October , 2007

SEAN F. BRYES

Exhibit C

## AMENDMENT NO. 1 TO PURCHASE AGREEMENT

THIS AMENDMENT NO. 1 TO THE PURCHASE AGREEMENT is made and entered into this _____ day of September, 2007 by and among Joseph E. Koury ("Koury"), Xcellence, Inc., a Missouri corporation ("Xact") and Accurate Repro, LLC, a Missouri limited liability company (the "Company").

RECITALS:

A.    Koury, the Company and Xact are parties to a Purchase Agreement dated May 3, 2006 (the "Purchase Agreement").

B.    In July, 2007, Koury accepted employment with Everest Technologies Company, LLC or an affiliate thereof (the "Employment") which Xact alleges violated the terms of Section 7 of the Purchase Agreement and entitled Xact to terminate payments to Koury under Section 3 of the Purchase Agreement. Koury disputes these claims.

C.    Xact ceased payments to Koury and did not make the August, 2007 and September, 2007 payments, each in the scheduled amount of $28,023.78.

D.    Xact's primary lending bank has indicated that it may take certain actions that, pursuant to a Subordination Agreement executed by Xact and Koury, may affect Xact's ability to make payment under section 4 of the Purchase Agreement, which section remains in full force and effect.

E.    Xact and Koury have now reached agreement on the following Amendment to the Purchase Agreement in order to resolve their disagreement over the effect of the Employment.

AGREEMENTS:

1.    Unless otherwise defined herein, all capitalized terms shall have the same definition as set forth in the Purchase Agreement.

2.    In consideration of Koury's promises and agreements set forth in this Amendment, Xact and the Company hereby release and discharge Koury from any and all claims, losses, liabilities, obligations or costs arising out of or relating to the Employment.

3.    In consideration for the release set forth in paragraph 2 of this Amendment, Koury agrees as follows:

(a)    Koury hereby releases and discharges Xact and the Company or any of their officers, directors, employees, affiliates or agents from any and all claims, losses, liabilities, obligations or costs arising out of or relating to the August 2007 and September 2007 payments referenced in paragraph C of the recitals above.

DB03/803937.0007/8029651.2

(b)    Koury hereby agrees that the Purchase Price and payment terms set forth in Section 3 of the Purchase Agreement are modified as follows:

(1)    the Purchase Price is reduced by $40,193.40, representing the principal amount of the scheduled August 2007 and September 2007 payments that have been released hereunder, plus an additional $150,000.00, for a total reduction in the Purchase Price of $190,193.40. The Purchase Price is therefore amended to be $1,159,806.60.

(2)    The remaining balance owed on the Purchase Price, taking into account payments previously made and the reduction stated in paragraph 3(b)(1) of this Amendment, is $856,437.90, which sum shall be payable on a deferred basis over a forty-three (43) month period, together with interest on the unpaid portion at the rate of 9% per annum, a schedule of which is attached hereto as Exhibit E-1, which shall replace Exhibit E to the original Purchase Agreement. Accordingly, subject to the terms of the Subordination Agreement, the Company shall pay forty-three (43) consecutive monthly installments of $23,375.09 each, with the first such payment to be made on October __, 2007 and the last such payment to be made on April __, 2011; provided, however, in the event there shall be an Exit Event, the unpaid portion of the Purchase Price shall be payable within five (5) days after the occurrence of such Exit Event; provided further, in the event Koury materially violates any provision of Section 7(a) of this Agreement or violates in any respect any provision of Section 7(b) or Section 7(c) of this Agreement, Koury shall be released from any further obligation under paragraphs 7(a), 7(b) or 7(c) of the Agreement and the Company shall be excused from making any further payments of the Purchase Price (and interest thereon), and its obligation to make such further payments shall be extinguished and of no further force or effect (it being understood and agreed that such extinguishment of the Company's obligation to pay the remainder of the Purchase Price shall be considered as a buy-out by Koury of his remaining obligations under Sections 7(a), 7(b) and 7(c)). For purposes hereof, an "Exit Event" shall mean (a) the sale of all or substantially all of the assets of the Company or (b) the sale of 51% or more of the Membership Interest in the Company by Xact other than a sale or transfer to an entity controlled by Xact. Xact hereby guarantees the Company's obligations under this Section 3.

(c)    Koury shall provide to Xact an affidavit setting forth the dates of the Employment, the individual or entity that was his employer for the Employment, that the Employment has terminated and that he has no further affiliation, ownership, partnership or contractual relationship with the employer or its affiliates, or with any other entity that is in competition with Xact's and/or the Company's business in the Markets served by Xact and/or the Company.

4.    Add the following introductory sentence to Section 7, before any subheadings:

"7.    For so long as Koury wishes to continue Xact's payment obligation or until May 4, 2009, whichever earlier occurs:"

5.    Delete Section 7(d) of the Purchase Agreement.

10/03/2007 3:27PM (GMT-05:00)

6.    Section 8 of the Purchase Agreement is hereby modified to read as follows:

"8.    Koury acknowledges and agrees that the Company has no liability or obligation to him (including any right to indemnification under law or otherwise), other than as expressly provided in this agreement. Koury hereby agrees to indemnify and hold harmless the Company, its officers, employees and members (including Xact) from any and all claims, losses, liabilities, fines, assessments, penalties, obligations and costs threatened or imposed against the Company (as well as any attorney's fees or costs of investigation associated with such claims) (each, a "Loss") related to or arising out of (a) any failure of any representation or warranty made by Koury in this agreement, (b) the employment of Mary Koury by the Company or the termination of her employment with the Company as contemplated by Section 17 hereof, or (c) any and all third party claims resulting from actions taken by Koury, or at his direction, on behalf of the Company or otherwise (whether or not taken in the scope of his employment) on or prior to the date hereof other than (i) certain actions taken with respect to one customer in the New York market, which actions have been disclosed to the Company completely, truthfully, and in no way misleading, and (ii) actions taken in good faith and in furtherance of the best interest of the Company; provided, however any actions taken by Koury or at his direction (but not including those actions referred to in the foregoing clause (i)) that would be a violation of any law that could result in criminal sanctions, fines or assessment to Koury, the Company or any person that has a business relationship with the Company shall in all respects be covered and included in Koury's obligation to indemnify hereunder; provided, however, notwithstanding the foregoing (x) Koury shall only be liable to the Company for legal fees incurred by the Company in connection with a claim by a third party if the Company has been found liable for damages, fines, assessments or penalties to such third party by a court of competent jurisdiction, and (y) Koury shall not be liable to the Company for consequential, special, punitive or exemplary damages incurred by the Company unless the same have been awarded to a third party as a result of a legal proceeding before a court of competent jurisdiction. Koury's obligations under this paragraph 8 shall be limited to the Purchase Price hereunder, $1,159,806.60. Koury shall not be required to indemnify for any Loss to the extent the Company receives insurance recoveries with respect to such Loss. The Company agrees that it will not exercise any right of setoff it may have with respect to its obligation to make payments of the Purchase Price under Section 3 above unless and until (1) in the case of Losses relating to claims, liabilities, fines, penalties, etc. by or to third parties, the Company has actually sustained a Loss pursuant to a settlement or plea bargaining agreement or pursuant to a court order, judgment or verdict, and (2) in the case of a Loss resulting from a breach of Sections 8(a) and 8(b) above, when the Loss has actually been sustained by the Company."

7.    All remaining terms and provisions of the Purchase Agreement that are not expressly amended herein shall remain in full force and effect.

IN WITNESS WHEREOF, the parties have made and entered into this agreement the day and year first above written.

_____                    ACCURATE REPRO, LLC
Joseph E. Koury
                                           By:    Xcellence, Inc. and Joseph E.

DB01/803937.0007/6822566.1
DB03/803937.0007/8029651.2

XCELLENCE, INC.

_Bob Polus_

Robert Polus
Chairman of the Board
Xcellence, Inc.

Koury, members of Accurate
Repro, LLC

By: _Bob Polus_

Robert Polus
Chairman of the Board
Xcellence, Inc.

By: _____

Joseph E. Koury

DB03/803937 0007/6822566.1
DB03/803937.0007/8029651.2

# Exhibit D

**COPY**

 **Commerce Bank**

Lenexa Banking Center
8700 Monrovia Street
Lenexa, Kansas 66215
(816) 234-2000

September 26, 2007

<u>CERTIFIED MAIL, RETURN RECEIPT REQUESTED</u>

JOSEPH E. KOURY
18 Club Way
Red Bank, New Jersey 07701

    Re:  Subordination Agreement

Dear Mr. Koury:

    Reference is made to that certain Subordination Agreement ("Agreement") dated June 12, 2006, by and among Xcellence, Inc. ("Borrower"), Accurate Repro, LLC ("Subordinating Entity"), Joseph E. Koury ("Creditor") and Commerce Bank, N.A. ("Lender").

    Terms used herein which are defined in the Agreement shall have the meanings given to them in the Agreement.

    Pursuant to the Agreement, with respect to the Subordinated Indebtedness, Creditor agreed as follows:

    All Subordinated Indebtedness of Subordinating Entity to Creditor is and shall be subordinated in all respects to all Superior Indebtedness of Borrower to Lender.

    Also pursuant to the Agreement, with respect to payments received on the Subordinated Indebtedness, Creditor agreed as follows:

    ... Subordinating Entity may make regularly scheduled payments of $28,023.78 each month to Creditor in accordance with the terms of the Subordinated Indebtedness so long as Borrower is not in default under any agreement between Lender and Borrower.  Creditor may not accelerate any amounts owed to Creditor without Lender's prior written consent.

    Notice is hereby given that Borrower is currently in default under one or more agreements between Lender and Borrower.



Mr. Joseph E. Koury
September 26, 2007
Page 2


Accordingly, until further notice, Creditor shall not be entitled
or allowed to receive or collect any more payments from
Subordinating Entity with respect to the Subordinated
Indebtedness.

    Your prompt attention to this matter will be expected.
Should you have any questions, please feel free to give me a
call; my direct number is 816-234-2324.

                            Sincerely,

                            *Pamela Hosty*

                            Pamela Hosty
                            Vice President


cc:  Xcellence, Inc.
     5800 Foxridge, Ste 406
     Mission, Kansas 66202