Michael A. Kalish (MK-8118)
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177-1211
(212) 351-4500
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOSEPH KOURY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08 cv 5409 (SAS) |
| v. | ) | |
| | ) | **ECF CASE** |
| XCELLENCE, INC., d/b/a XACT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN**
**SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

I. Factual Background ..... 1

II. Plaintiff's Claims ..... 2

III. Legal Standard ..... 3

IV. Plaintiff's Breach of Contract Claim Fails to State a Claim Upon Which Relief May be Granted. ..... 3

A. The Pleadings Reveal that Defendant Did Not Breach the Purchase Agreement, So the First and Second Causes of Action Should Be Dismissed. ..... 4

1. Plaintiff Agreed to Subordinate his Right to Payment to Defendant's Lenders. ..... 4

2. The Subordination Agreements are Valid ..... 5

3. Defendant Rightly Interrupted Payments to Plaintiff. ..... 6

V. Plaintiff's Claim for Breach of Fiduciary Duty Fails to State a Claim Upon Which Relief May be Granted. ..... 8

A. Missouri Law Applies to the Breach of Fiduciary Duty Claim. ..... 9

B. Missouri Law does not Recognize Plaintiff's Cause of Action for Breach of Fiduciary Duty ..... 10

C. Plaintiff has no Standing to Bring a Claim for Fiduciary Duty as an Individual Creditor. ..... 11

## TABLE OF AUTHORITIES

### CASES

*ALJ Capital, L.P. v. David J. Joseph Co.*, 841 N.Y.S.2d 217 (N.Y. Sup. 2007) ....................4

*AM Cosmetics, Inc. v. Solomon*, 67 F. Supp. 2d 312 (S.D.N.Y. 1999) ....................6

*Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384 (S.D.N.Y. 2007) ....................9

*BBS Norwalk One, Inc. v. Raccolta, Inc.*, 60 F. Supp. 2d 123 (S.D.N.Y. 1999)....................9

*Dawson v. Withycombe*, 163 P.3d 1034 (Ariz. App. Div. 1 2007)....................10

*Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337 (S.D.N.Y. 2008) ....................3

*Drummond Co. v. St. Louis Coke & Foundry Supply Co.*, 181 S.W.3d 99 (Mo. Ct. App. 2005) ....................10, 11

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ....................9

*Fershtadt v. Verizon Comms. Inc.*, No. 07civ6963, 2008 WL 1882670 (S.D.N.Y. April 24, 2008) ....................3

*Geyer v. Ingersoll Publications Co.*, 621 A.2d 784 (Del. Ch. 1992) ....................10

*High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420 (S.D.N.Y. 1998) ....................9

*Oppenheimer & Co., Inc. v. Oppenheimer, Appel, Dixon & Co.*, 660 N.E.2d 415 (N.Y. 1995) ....................6

*Potter v. Arrington*, 810 N.Y.S.2d 312 (N.Y. Sup. 2006)....................9

*In re Southeast Banking Corp.*, 710 N.E.2d 1083 (N.Y. 1999)....................6

*Stricker v. Union Planters Bank, N.A.*, 436 F.3d 875 (8th Cir. 2006)....................11

*Matter of Weis Securities, Inc.*, 605 F.2d 590 (2nd Cir. 1978)....................6

## STATUTES

Federal Rule of Civil Procedure 12(b)(6)........................................................................................1

Defendant, Xcellence, Inc., d/b/a XACT ("Defendant"), submits this memorandum in support of its motion to dismiss plaintiff's complaint (the "Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted. Plaintiff, Joseph Koury ("Plaintiff") asserted three causes of action in the Complaint; (1) a breach of contract claim for damages, (2) a claim for a declaratory judgment that Defendant breached the contract, and (3) a claim for breach of fiduciary duty allegedly owed to Plaintiff as a creditor. Even taking Plaintiff's allegations as true, Defendant's conduct *complied* with the contracts alleged in the Complaint, and Defendants did not owe Plaintiff a fiduciary duty under governing law. Accordingly, Plaintiff's Complaint should be dismissed for failure to state a claim.

## I. Factual Background

Plaintiff was a member of Accurate Repro, LLC ("Accurate"), a reproduction services company. Complaint ("Compl.") ¶ 6. (A copy of the Complaint is attached to the July 2, 2008 Affidavit of Michael A. Kalish ("Kalish Aff.") as Exhibit A.) Defendant is a Missouri corporation in the business of reproduction services. Compl. ¶ 7. In May 2006, Plaintiff and Defendant (the "Parties"), executed the "Purchase Agreement" whereby Defendant agreed to purchase Plaintiff's share of Accurate by making monthly payments to Plaintiff. Compl. ¶¶ 11-13. Pursuant to the Purchase Agreement, Plaintiff agreed to subordinate his right to payment to Defendant's lender. Compl. ¶¶14-15; Compl. Ex. 1, Purchase Agreement ¶ 4. As required by the Purchase Agreement, on about June 12, 2006 Plaintiff executed a Subordination Agreement, agreeing to subordinate his right to payment under the Purchase Agreement to Defendant's lender, Commerce Bank, N.A. (the "Commerce Subordination Agreement") (attached as Exhibit B to the Kalish Aff.). Compl. ¶ 15.

In addition, the Purchase Agreement contained a clause prohibiting Plaintiff from competing with Defendant for a period of three years. Compl. ¶ 16; Compl. Ex. 1 ¶ 7(b). On or about July 30, 2007, Defendant notified Plaintiff that his employment with Defendant's competitor violated terms of the Purchase Agreement. Compl. ¶ 21. In order to resolve their dispute regarding Plaintiff's prohibited employment, on or about September 29, 2007, the Parties executed Amendment No. 1 to Purchase Agreement (the "Amendment"), whereby the purchase price for Plaintiff's interest in Accurate was reduced by approximately $190,000. Compl. ¶ 28; Amendment No. 1, Compl. Ex. 3. On or about October 3, 2007, Commerce Bank notified Plaintiff that it was halting his right to receive payments from Defendant pursuant to the terms of the First Subordination Agreement. Compl. ¶ 29; Compl. Ex. 4.

After Commerce Bank exercised its right to subordinate Plaintiff's payments, Defendant refinanced its debt with Marshall & Ilssley Bank ("M&I"), and pursuant to the terms of the Purchase Agreement, Plaintiff executed a new subordination agreement ("M&I Subordination Agreement") in favor of M&I (attached as Exhibit C to the Kalish Aff.). Compl. ¶ 35. Defendant resumed payments to Plaintiff in December 2007 and January 2008, but on or about January 24, 2008, M&I exercised its right to subordinate Plaintiff's right to payment. Compl. ¶ 37. Defendant has not made a payment to Plaintiff since M&I subordinated Plaintiff's rights at the end of January 2008. Compl. ¶ 42.

## II. Plaintiff's Claims

Ignoring the terms of the very Agreements cited in his Complaint, Plaintiff claims that Xact's failure to pay him during the subordination periods breached the Purchase Agreement. Compl. ¶ 51. He also appears to claim that Xact's failure to provide a "catch-up" payment between the Commerce Bank subordination period and the M&I Bank subordination period breached the Purchase Agreement. *Id.* Plaintiff seeks damages for alleged breach in his

first cause of action, or, in the alternative, a declaration that he is no longer bound by the non-compete obligation of the Purchase Agreement in his second cause of action. Plaintiff also speculates that Xact was "apparently insolvent" at the time of its refinancing with M&I Bank, and alleges that Xact owed him a fiduciary duty as a result. Compl. ¶¶ 39-40.

Even accepting Plaintiff's allegations as true, his claims fail as a matter of law. The contracts he relies on expressly authorize the very conduct about which he complains, and controlling law does not recognize the fiduciary duty he alleges.

## III. Legal Standard

In reviewing a motion to dismiss for failure to state a claim, the court accepts the material facts in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337, 341 (S.D.N.Y. 2008). However, the plaintiff may not rely on mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* The Plaintiff has the obligation of demonstrating grounds for relief and must provide "enough facts to state a claim to relief that is plausible on its face." *Id.* at 342 (internal quotations and citations omitted). Plaintiff's "allegations must be enough to raise a right to relief above the speculative level." *Fershtadt v. Verizon Comms. Inc.*, No. 07civ6963, 2008 WL 1882670, *4 (S.D.N.Y. April 24, 2008). When deciding on a motion to dismiss, the court may consider the "full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit." *Diaz,* 536 F. Supp. 2d at 342.

## IV. Plaintiff's Breach of Contract Claim Fails to State a Claim Upon Which Relief May be Granted.

Plaintiff's claim for breach of contract alleges facts precluding his claim for relief, and should be dismissed. Pursuant to the Purchase Agreement, New York law governs Plaintiff's

breach of contract claim.[1] To prevail on a claim for breach of contract, Plaintiff must establish that; (1) a binding contract existed between the Parties; (2) that Plaintiff performed his obligations under the contract; (3) that Defendant breached the contract; and (4) that Plaintiff suffered damages as a result of Defendant's breach. *See ALJ Capital, L.P. v. David J. Joseph Co.*, 841 N.Y.S. 2d 217, *4 (N.Y. Sup. 2007) (outlining the elements for breach of contract claims). The Parties executed the Purchase Agreement, which constitutes a binding contract for the sale of Plaintiff's interest in Accurate. Compl. ¶¶ 11-13. Pursuant to the Purchase Agreement, the Parties executed the Subordination Agreements which also constitute binding contracts. Compl. ¶¶ 15, 35. The terms of those contracts expressly authorize the very conduct alleged in the Complaint. Accordingly, even accepting Plaintiff's factual allegations as true, he cannot establish the third element of his breach claim under New York law (that Defendant breached the contract), and his claims for breach and declaratory judgment should be dismissed.

### A. The Pleadings Reveal that Defendant Did Not Breach the Purchase Agreement, So the First and Second Causes of Action Should Be Dismissed.

#### 1. Plaintiff Agreed to Subordinate his Right to Payment to Defendant's Lenders.

Plaintiff alleges that Defendant "breached its obligations under the Purchase Agreement by its continued failure to pay Plaintiff the proceeds of the business he sold to Defendant, including those payments missed during the first subordination period." Compl. ¶ 51. However, the pleading shows that Plaintiff agreed to subordinate his right to receive payments from Defendant to the rights of Defendant's primary lending bank, first Commerce Bank and then M&I Bank (collectively the "Lenders"). Plaintiff agreed that upon the Lender's exercise of

---

[1] The Purchase Agreement contains a choice-of-law provision stating that contract claims based on the Purchase Agreement are to be governed by New York law. Compl. Ex. 1, ¶ 11.

its subordination rights, he would not receive payments until such subordination was lifted. Ex. B p. 1; Ex. C p. 1.

The Purchase Agreement on which Plaintiff relies provides that:

> The rights of Koury hereunder, including the right to receive payment of the Purchase Price and interest thereon, shall be subordinate to the rights of claims of all holders of indebtedness for borrowed money of the Company and/or of Xact. In this regard, Koury aggress that the subordination provisions set forth in Exhibit C hereto shall govern Koury's rights hereunder. Further, Koury agrees to enter into any futher subordination agreement that may be required by any lender of the Company and/or Xact.

Compl. Ex. 1 ¶ 4 (emphasis added). Attached to the Purchase Agreement as Exhibit C was the Subordination Agreement between the Parties and Commerce Bank. In relevant part, the Commerce Subordination Agreement provided that:

> **PAYMENTS TO CREDITOR.** Except as provided below, [Xact] will not make and [Koury] will not accept, at any time while any Superior Indebtedness is owing to Lender, (A) any payment upon [the Purchase Agreement], .... Notwithstanding the foregoing, [Xact] may make regularly scheduled payments of **$28,023.78 each month** to [Koury] in accordance with the terms of the [Purchase Agreement] so long as [Xact] is not in default under any agreement between Lender and [Xact]. [Koury] may not accelerate any amounts owed to [Koury] without Lender's prior written consent.

Ex. B p. 1. The M&I Subordination Agreement contains the same clause with the only change being the reduction of the monthly payments to $23,375.09. Ex. C p. 1.

**2. The Subordination Agreements are Valid**

The Purchase Agreement and Subordination Agreements clearly and unambiguously subordinate Plaintiff's right to receive monthly payments, and prohibit Defendant from making any payments to Plaintiff, after the Lenders have exercised their right to subordinate. Plaintiff's Complaint acknowledges that the Lenders exercised their subordination rights in each instance during which Defendant suspended payments to him. Compl. ¶¶ 29, 37.

If Plaintiff was unhappy about the subordination clause in the Purchase Agreement, "the time to say so [was] at the bargaining table." *Oppenheimer & Co., Inc. v. Oppenheimer, Appel, Dixon & Co.*, 660 N.E.2d 415, 421 (N.Y. 1995) (internal citation omitted). Plaintiff cannot now alter the terms of the Purchase Agreement and contravene the intent of the Subordination Agreements by ignoring the terms that he no longer likes.

New York courts uphold and enforce subordination agreements. *AM Cosmetics, Inc. v. Solomon*, 67 F. Supp. 2d 312, 323 (S.D.N.Y. 1999); *see also*, *In re Southeast Banking Corp.*, 710 N.E.2d 1083, 1084-85 (N.Y. 1999); *Matter of Weis Securities, Inc.*, 605 F.2d 590, 592-94 (2nd Cir. 1978) (enforcing subordination agreements according to their terms). In *AM Cosmetics*, the buyers and sellers of a business executed a Note containing a subordination clause, along with a purchase agreement containing a non-compete clause. *Id.* The buyers later sued sellers for, among other things, alleged breach of the non-compete clause. In a counterclaim, sellers alleged that buyers' incurrence of superior debt and subsequent termination of payments to them breached the Note and buyers' duty to deal with them in good faith. *Id.* Finding that the buyers had not breached the Note, the court said that "[s]ubordination agreements are generally upheld" and that enforcement of an agreed upon contract provision could "not constitute a breach of good faith." *Id.* at 323-24. Like the sellers' right to payment in *AM Cosmetics*, here Plaintiff's right to payment as a seller of his business has been subordinated. Defendant has not breached the Purchase Agreement by acting according to its express terms and the terms of the two Subordination Agreements to which Plaintiff agreed.

**3. Defendant Rightly Interrupted Payments to Plaintiff.**

The facts in the Complaint reflect that Defendant has properly withheld payments pursuant to the terms of the Purchase Agreement and Subordination Agreements. Commerce Bank subordinated Plaintiff's payments in October 2007. Compl. ¶ 29. Thereafter Defendant

refinanced with M&I and resumed making monthly payments to Plaintiff. Compl. ¶ 35. Plaintiff alleges that Defendant breached the Purchase Agreement when it resumed making monthly payments to him but did not pay him a lump sum for the amount missed during Commerce Bank's subordination of his payments. However, Subordination Agreement with M&I specifically prohibits such a lump sum payment to Plaintiff for the amount missed during the subordination period. The Subordination Agreement provides that the only payments allowed to be made to Plaintiff are regular monthly installments of $23,375.09, and that "[Plaintiff] may not accelerate any amounts owed … without Lender's prior written consent." Ex. C p. 1. Had Defendant paid Plaintiff more than $23,375.09 in December, 2007 or January, 2008, both Parties would have been in default of the M&I Subordination Agreement and M&I would have had the right to demand that Plaintiff hold the excess payment(s) in trust for it and immediately turn those funds over to M&I. *Id.* Accordingly, Plaintiff's apparent claim that Defendant breached its obligations to him by not making a "catch-up" payment is precluded by the express terms of the M&I Subordination Agreement referenced in his Complaint.

Plaintiff also alleges that Defendant breached the Purchase Agreement by not currently making payments to Plaintiff, but this allegation is also contradicted by the specific facts set forth in the Complaint and agreements referenced in it. M&I subordinated Plaintiff's right to receive payments in about January 2008, and has not lifted the subordination. Compl. ¶¶ 37, 42. Pursuant to the terms of the M&I Subordination Agreement, Defendant is prohibited from making payments to Plaintiff during the period in which M&I has subordinated his payments, and Plaintiff is prohibited from receiving any payments during that time. Ex. C p. 1. Defendant has withheld payments to Plaintiff as required by the Purchase Agreement and M&I

Subordination Agreement. Plaintiff's conclusory assertions of breach cannot control over the specific obligations and agreements referenced in the Complaint.

Plaintiff executed the Purchase Agreement requiring subordination of his right to payment and executed two Subordination Agreements outlining the terms and conditions of his subordinated debt. Defendant has complied with these contracts by withholding payments to Plaintiff during periods in which the Lenders subordinated Plaintiff's right to payment. Plaintiff now seeks to nullify the subordination clause of the Purchase Agreement and both Subordination Agreements and characterize Defendant's compliance with the subordination provisions as a breach. Defendant cannot breach a contract by complying with its terms – and Plaintiff's recent dissatisfaction with those terms is no basis for a cause of action against Defendant. Plaintiff's first cause of action for breach of the Purchase Agreement and his second cause of action for a declaratory judgment that he is no longer bound by its restrictive covenant must be dismissed for failure to state a claim.

## V. Plaintiff's Claim for Breach of Fiduciary Duty Fails to State a Claim Upon Which Relief May be Granted.

In his third cause of action, Plaintiff alleges that "[a] fiduciary relationship between Defendant and Plaintiff existed" due to Defendant's "apparent[] insolven[cy]" and that "Defendant breached that fiduciary duty … by failing to take the steps necessary to pay Mr. Koury the money he is owed by selling Xact's assets." Compl. ¶¶ 39, 56-57. This cause of action fails to state a claim because governing Missouri law rejects the imposition of a fiduciary duty in the circumstances alleged, and because even if such a fiduciary duty existed it would not be owed to Plaintiff individually but to all creditors, and would only be enforceable as a derivative claim.

**A. Missouri Law Applies to the Breach of Fiduciary Duty Claim.**

Application of New York choice of law principles reveals that Missouri law applies to Plaintiff's claim for breach of fiduciary duty. *Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 392-93 (S.D.N.Y. 2007) ("In diversity cases the federal courts must follow conflict of laws rules prevailing in the state in which they sit." (internal citation omitted)). "Under New York law, issues relating to the internal affairs of a corporation are decided in accordance with the law of the state of incorporation." *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 60 F. Supp. 2d 123, 129 (S.D.N.Y. 1999). "The internal affairs doctrine recognizes that the state of incorporation has an interest superior to that of other states in regulating the directors' conduct of the internal affairs of its own corporations." *Id.* at 129. Without the "internal affairs doctrine," corporate officers "could be faced with conflicting demands" from varying state laws. *Edgar v. MITE Corp.*, 457 U.S. 624, 645-46 (1982). Claims for breach of fiduciary duty asserted by corporate constituents relate to the internal affairs of a corporation. *See e.g., Potter v. Arrington*, 810 N.Y.S. 2d 312, 315-16 (N.Y. Sup. 2006) (noting that courts apply the law of the state of incorporation for claims of breach of fiduciary duty owed to a corporation); *High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420, 428 n.6 (S.D.N.Y. 1998) (finding that the state of incorporation's law governed a claim for breach of fiduciary duty brought by investors against directors of a corporation). Because Plaintiff's claim for breach of fiduciary duty relates to Defendant's internal affairs, the law of Missouri, the state of Defendant's incorporation, governs the cause of action. *See Potter*, 810 N.Y.S. 2d at 315-16.[2]

---

[2] The choice-of-law clause in the Purchase Agreement is inapplicable to Plaintiff's breach of fiduciary duty claim. "Under New York's conflict-of-law rules…a contractual choice-of-law provision does not ordinarily bind the parties as to tort claims." *BBS Norwalk*, 60 F. Supp. 2d at 129. In *BBS Norwalk*, the Court said that the contractual choice-of-law provision did not cover the claim for aiding and abetting a corporate officer's breach of fiduciary duty because the choice-of-law provision did not purport to cover

*Continued . . .*

**B. Missouri Law does not Recognize Plaintiff's Cause of Action for Breach of Fiduciary Duty.**

Generally, directors and officers of a corporation owe a fiduciary duty to the shareholders of the corporation, but not to the creditors. *Drummond Co. v. St. Louis Coke & Foundry Supply Co.*, 181 S.W.3d 99, 103 (Mo. Ct. App. 2005) ("[a]bsent statutory authority, or an intentional or fraudulent act, the relationship between a creditor and a corporation is that of contract, not one of trust." (internal citation omitted)). While some state courts have found that a corporation's insolvency creates fiduciary duties for the benefit of creditors,[3] Missouri courts have specifically rejected such duties. "Missouri has rejected the concept that corporate directors are fiduciaries for creditors, even in the event of insolvency, and has held that directors are not individually liable to creditors, absent statutory authority or an intentional or fraudulent act." *Drummond*, 181 S.W.3d at 104. A handful of century-old Missouri cases "do recognize directors' liability to creditors in the limited situation where the corporation is not a going concern, but rather is clearly going out of business or incapable of doing business and that is conclusively established that it is insolvent." *Id.* (internal citations omitted) (emphasis added). In these very limited situations, the directors and officers are placed "in a trustee-like position for the equal benefit of all creditors." *Id.* (emphasis added).

Here, the most that Plaintiff can muster is the completely speculative allegation that Defendant is "apparently insolvent," Compl. ¶ 39, and that its business is "struggling." *Id.* ¶

---

tort actions, and "[i]n any event, because the claim…relates fundamentally to the conduct of the internal affairs of [the corporation], the law of the state of incorporation – Delaware - governs." *Id.*

[3] *See, e.g., Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 787 (Del. Ch. 1992); *Dawson v. Withycombe*, 163 P.3d 1034, 1057 (Ariz. App. Div. 1 2007) ("Once a corporation becomes insolvent, the creditors join the class of persons to whom directors owe a fiduciary duty to maximize the economic value of the firm for the benefit of *all* the firm's creditors.").

44. Obviously these allegations do not rise to the level that older Missouri cases (assuming those cases are still good law) would recognize as shifting fiduciary duties from shareholders to creditors.

In *Drummond*, the Missouri Court of Appeals noted that the few early Missouri cases recognizing a fiduciary duty to creditors involved circumstances where "the corporation was effectively *de facto* dissolved, placing the directors and officers in a trustee-like position for the equal benefit of all creditors.... " *Drummond*, 181 S.W.3d at 104. The court said that the earlier Missouri cases were inapplicable because there was no indication that the debtor "was clearly going out of business, incapable of doing business, or not a going concern," but rather, "despite its financial difficulties, St. Louis Coke continued" to conduct business during the relevant time period. *Id.* Here, the Complaint alleges that Defendant's business is "struggling," indicating circumstances that are, at worst, like those facing the defendant in *Drummond*. The holding in *Drummond* precludes finding that Defendant owed a fiduciary duty to Plaintiff here, and Plaintiff's third cause of action must be dismissed.

**C. Plaintiff has no Standing to Bring a Claim for Fiduciary Duty as an Individual Creditor.**

Even where *de facto* dissolution is established and a fiduciary duty to creditors might exist under Missouri law, individual creditors do not have standing to sue. *Stricker v. Union Planters Bank, N.A.*, 436 F.3d 875, 878 (8th Cir. 2006). In *Stricker*, plaintiffs were shareholders and creditors of the defendant corporation, and initially sued for breach of fiduciary duty owed to them as shareholders for the corporation's failure to repay a loan that plaintiffs had guaranteed. *Id.* at 877-78. The District Court dismissed plaintiffs' claims as shareholders, finding that the claims were based on their status as creditors. Plaintiffs moved to amend their complaint to assert claims for breach of fiduciary duties owed to them as creditors, but the

District Court denied leave to amend because "an individual creditor does not have standing to assert a breach of fiduciary duty claim against corporate directors." *Id*. at 878. Plaintiffs appealed the District Court's denial of their amendment, but the Eighth Circuit affirmed, noting that the plaintiffs were "not suing on behalf of all creditors of [the corporation and] they seek only and individual recovery." *Id.* at 879. Similarly here, even if Plaintiff had alleged and could establish a *de facto* dissolution of Defendant's business, his individual action for breach of a fiduciary duty owed to all creditors would be barred. For this reason as well, Plaintiff's third cause of action should be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that Plaintiff's causes of action for breach of contract, declaratory judgment, and breach of fiduciary duty be dismissed for failure to state a claim upon which relief can be granted.

Respectfully Submitted,

By: s/Michael A. Kalish
Michael A. Kalish (MK-8118)

Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177-1211
Phone: 212-351-3738
Fax: 212-878-8738

Sean W. Colligan
Jacy J. Hurst Moneymaker
Stinson Morrison Hecker LLP
1201 Walnut Street, Ste. 2900
Kansas City, MO 64106
Phone: 816-842-8600
Fax: 816- 691-3495

Attorneys for Defendant